IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS ILARRAZA-RODRIGUEZ<br>Plaintiff<br>vs<br>COMMONWEALTH OF PUERTO RICO; PUERTO RICO DEPARTMENT OF JUSTICE; CESAR MIRANDA-RODRIGUEZ, in his official capacity as Secretary of the Puerto Rico Department of Justice; MARITIME TRANSPORT AUTHORITY; DEPARTMENT OF TRANSPORTATION AND PUBLIC WORKS<br>Defendants | CIVIL 15-3167CCC |

**OPINION AND ORDER**

On December 29, 2015, plaintiff Luis Ilarraza (Ilarraza) filed a Complaint (d.e. 1) alleging that defendants Commonwealth of Puerto Rico ("Commonwealth"), the Puerto Rico Department of Justice ("DOJ"), the Honorable Cesar Miranda in his official capacity as Secretary of the DOJ ("Miranda"), the Puerto Rico Department of Public Transportation ("DPT"), and the Puerto Rico Maritime Transport Authority ("MTA") violated his right to reasonable accommodation under the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; and the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 et seq.; and also seeking monetary and injunctive relief under 42 U.S.C. § 1983 ("Section 1983") for the defendants' alleged violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Additionally, plaintiff brought supplemental claims alleging that defendants' conduct had infringed Article 1802 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 5141–5142. On September 16, 2016,

CIVIL 15-3167CCC                    2

defendants Commonwealth, DOJ, Miranda and DPT moved for summary judgment (**d.e. 32**) seeking the dismissal of plaintiff's federal claims on various grounds. On September 19, 2016, defendant MTA also moved for summary judgment (d.e. 35), which the other defendants joined on September 26, 2016 (d.e. 37). Both motions for summary judgment remain unopposed by the plaintiff. Finding that there is no genuine issue as to any material fact and that the moving parties are entitled to a judgment as a matter of law, we now GRANT both motions for summary judgment.

**I.    FACTUAL BACKGROUND**

The Court has gathered the following facts from the Statement of Uncontested Material Facts in Support of Motion for Summary Judgment filed by defendants Commonwealth, DOJ, Miranda and DPT (docket entry 33) and the MTA (docket entry 36), both of which remain uncontroverted by the plaintiff[1] and are deemed admitted. See Local Rule 56(e).[2] ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations . . ., shall be deemed admitted unless properly controverted.")

Plaintiff Ilarraza was appointed in a regular position as Maritime Transportation Supervisor with the MTA effective on July 1, 2004. Prior to his appointment in a regular position as Maritime Transportation Supervisor, plaintiff had temporary appointments since March 5, 2003 that were renewed periodically.

---

[1] Although plaintiff moved for an extension of time until October 26, 2016 to file his opposition (d.e. 38), he never did.

[2] Defendants' Motion Requesting Leave to File Documents in Spanish Pending Their Certified Translation (**d.e. 34**) is GRANTED. Their Motion Submitting Certified Translations (**d.e. 40**) is NOTED.

CIVIL 15-3167CCC                                3

On March 25, 2014, Dr. Walter Pagán-Agostini, psychiatrist, issued a reasonable accommodation request on behalf of plaintiff, which was addressed to Mrs. Gladys Fuentes (Fuentes), MTA's Human Resources Director, requesting his relocation to a service zone where he did not have to travel long distances. In tandem with this request, Dr. Pagán-Agostini recommended the maintenance area in the San Juan area in Isla Grande or the Central Offices located in Minillas Tower. On April 1, 2014, Fuentes issued a communication to plaintiff, entitled "request for reasonable accommodation," acknowledging receipt of the documents submitted by him including the medical certificate issued by Dr. Pagán-Agostini.  In said communication, Fuentes notified plaintiff that he had been given an official form of the agency, a request for medical information, and was informed that once he completed said documentation he should submit it to the Office of Human Resources  Fuentes further informed plaintiff that his request for reasonable accommodation would remain pending until he submitted he documentation requested, with the objective of completing the process established by the Authority for the evaluation of reasonable accommodation requests.

On July 18, 2014, Mary K. Vidal, a psychologist, filled out the MTA's form requesting medical information to carry out the reasonable accommodation process. In said form, Dr. Vidal stated that plaintiff suffered from an unspecified mood disorder and that his health condition began on February 17, 2014.  The symptoms reported by her as being experienced by plaintiff were "motor skill coordination somewhat sluggish, light difficulties in memory, loss of interest in pleasurable activities, . . . presently sedentary, does not participate in house chores and responsibilities."  She recommended that in order for plaintiff to maximize the clinical benefits of his treatment he should continue to be

CIVIL 15-3167CCC                           4

assigned to work in the Hato Rey area, where he was assigned as of that moment, and that no employees that had been previously involved in situations against him be placed in his same work shift.

On August 28, 2014, plaintiff filled out the form provided by the MTA to request reasonable accommodation, where he stated that he had previously requested reasonable accommodation for the same condition that he was requesting it at that moment. He further explained on the form that his prior request was the document sent by psychiatrist Dr. Pagán-Agostini requesting reasonable accommodation consisting in not traveling long distances, on account of his condition and the medications prescribed. On the form submitted on August 28, 2014, the duties that plaintiff claimed he could not perform were, among others, the reconciliation of ticket sales, manual destruction of the tickets, supervision of personnel with whom he had conflicts, and night shifts because he could not drive and he was taking medications at specific hours to sleep.

On October 10, 2014, MTA's Employee Assistant Program Coordinator, Karenly Ruiz-Reyes (Ruiz-Reyes), sent a written communication to Milka M. Sierra-Castro (Sierra), Human Resources Analyst, asserting that on August 22, 2014, plaintiff was referred to the Employee Assistant Program (PAE by its Spanish acronym) for a medical occupational evaluation as a requirement for a reasonable accommodation. The communication issued by Ruiz-Reyes to Sierra further related that plaintiff had previously been summoned to appear at the Human Resources Office on August 28, 2014 when he was referred to attend the Employee Assistant Program of Inspira on September 3, 2014. There, Mrs. Lucery Medina, a psychologist, evaluated plaintiff, and diagnosed him with moderate major depression making the following recommendations:

CIVIL 15-3167CCC                              5

(1) he could perform the essential duties of his position with the following reasonable accommodation: in a smaller station or office with fewer personnel working at the site; a reduction in tasks that required a high concentration level such as reconciliation [of ticket sales]; and (2) to continue with the psychiatric and psychological treatment.

On October 15, 2014, MTA's Executive Director, Jose A. Ruiz-García (Ruiz-García), issued a memorandum notifying the agency's personnel that the Martín Peña Channel had to be temporarily closed due to a hydrocarbon spill, not caused or imputable to the Authority, but which would keep the Hato Rey route and station out of service and inoperative while the pertinent agencies and entities completed the cleaning works.  As a result of said temporary closing of the Martin Peña Channel, all personnel assigned to the Hato Rey station, including plaintiff, were required to report to work at the Cataño station, during the same shifts that they had assigned according to their work schedule. On October 28, 2014, Sierra addressed a communication to plaintiff through Fuentes, the Human Resources Manager, stating that the analysis regarding his request for reasonable accommodation was completed and that they were recommending that the necessary adjustments be made to allow him to continue performing the duties of the position he held as Maritime Transportation Supervisor.  She noted in her communication that Inspira's psychologist, Lucery Medina, had determined that plaintiff could perform the essential functions of his position with the following accommodations: in a smaller station or office with fewer personnel working at the site, with a reduction in tasks that required a high concentration level such as reconciliation of ticket sales.  She further noted that as the job description of the position of Maritime Transportation Supervisor did not require him to do the

CIVIL 15-3167CCC                                    6

reconciliation of ticket sales, the recommended accommodation for a reduction of such duties was not applicable to him.  As to the accommodation of placing plaintiff in a smaller station or office where fewer personnel worked, Sierra informed the plaintiff that they were recommending to Mr. Carlos Lopez Roman (Lopez) to evaluate it based on the current needs of services by the Metropolitan Ferries Service, inasmuch as plaintiff's position was an operational one with rotating shifts.

On October 28, 2014, Sierra and Fuentes addressed a communication to Special Aid Lopez regarding plaintiff's request for reasonable accommodation, where they informed him that their office had evaluated said request and that plaintiff could perform the essential duties of his position in a smaller station or office where fewer personnel worked. They asked Lopez to evaluate said accommodation given that plaintiff's position was an operational one with rotating shifts and that such adjustment should be made based on the current needs of the Metropolitan Boating Service division.  They further asked Lopez to make the necessary adjustments in order to provide the plaintiff with a job environment that would satisfy his needs.

On November 12, 2014, at the MTA's San Juan site, plaintiff was required to submit a urine sample as part of a random drug test being administered to employees of that location.  He provided the sample to Phamatech, Inc., through its collector Juan Howe (Howe), M.A., SAP and Dr. Carlos Robles (Dr. Robles) as the Medical Review Officer (MRO).  The sample was identified with the number 1000520364.  On November 17, 2014, Phamatech, Inc., issued its report on the random urine test identified with the number 1000520364 which corresponded to the plaintiff.  Said sample tested positive to cocaine metabolites and benzoylecgonine.  On December 15, 2014,

CIVIL 15-3167CCC                              7

Dr. Robles, as the Medical Review Officer, issued a report on the urine test collected on November 12, 2014 from plaintiff as donor, confirming a positive result to cocaine and stating that the donor (i.e. plaintiff) had been given the opportunity to discuss the result, and no legitimate medical explanation was found.

On December 16, 2014, Howe issued a confidential communication to the MTA's Executive Director, Ruiz Garcia, informing him that on November 12, 2014, plaintiff had participated in the random tests for detection of controlled substances and that he had tested positive to cocaine. Howe further reported that given the positive result to cocaine and plaintiff's employment in a position classified as sensitive, he was unfit to continue performing his duties and could not drive official vehicles of the MTA. He recommended the Executive Director to take action in accordance with the applicable regulations of the MTA.

On December 17, 2014, plaintiff filed a discrimination charge in the Equal Employment Opportunity Commission claiming that the MTA as his employer had discriminated against him because of his disability and had not provided him the reasonable accommodation previously requested.

On December 24, 2014, plaintiff was provided with a copy of the notice of administrative charges filed against him on account of the positive result to cocaine in the random drug test, which was issued on December 22, 2014, and signed by Executive Director Ruiz Garcia. Plaintiff had previously acknowledged on March 4, 2003 the receipt of a document outlining the public policy of the Commonwealth and its Ports Authority which guaranteed a workplace free of drugs. As reflected in the December 22, 2014 letter informing plaintiff of the administrative charges, the disciplinary sanctions, established in MTA's regulations for the violation imputed to him on account of his positive

CIVIL 15-3167CCC                              8

result to cocaine in the random drug test, range from a written admonishment to suspension and termination from employment.  Upon receipt of the communication, plaintiff was suspended from employment but not from salary until an informal administrative hearing set for January 12, 2015 could be held. Said hearing was convened as scheduled.  On January 14, 2015 Human Resources Manager Fuentes informed the plaintiff that his suspension from employment would continue until a final adjudication was made on his case. On January 21, 2015, examining officer Juan Carlos Villafañe-Conde issued a report where he found that the position held by plaintiff of Maritime Transportation Supervisor was classified as sensitive as it entailed the transport of passengers and that he had tested positive to cocaine on the random drug test performed on November 12, 2014.  He, therefore, recommended to the Executive Director that, pursuant to MTA's regulations, plaintiff be terminated from his employment.

On February 6, 2015, MTA's Executive Director Ruiz-García issued a letter to plaintiff informing him that after reviewing the report of the examining officer he agreed with the recommendation that he be terminated from employment on account of having tested positive to cocaine in a random drug test, in violation to the personnel norms and regulations of the MTA.  As a result, plaintiff was terminated from his employment with the MTA on February 17, 2015.

**II.    STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden is on the moving party to establish the lack of a genuine, material, factual issue, Finn v. Consolidated Rail Corp., 782 F.2d 13, 15 (1st Cir. 1986), and the Court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence, Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). Summary judgment is proper when, after adequate time for discovery, the party against whom judgment is sought fails to show sufficient basis for the establishment of an essential element of its case. Kauffman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172 (1st Cir. 1988) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 332, 106 S.Ct. 2548, 2557 (1986) and Moody v. Maine Central R.R. Co., 823 F.2d 693, 694 (1st Cir. 1987)).

## III.  DISCUSSION

### Eleventh Amendment/sovereign immunity

Movants first aver that plaintiff's claim against them for monetary relief under the ADA is barred by the Eleventh Amendment. They are right. Title I of the ADA generally prohibits an employer from discriminating against an employee with a disability. 42 U.S.C. § 12112(a). The ADA also imposes on employers an affirmative duty to offer reasonable accommodation to an impaired, but otherwise qualified individual. Calero–Cerezo v. U.S. Dept. of Justice, 355 F.3d 6, 20 (1st Cir. 2004). ADA's Title V, in turn, prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful [by its provisions]." 42 U.S.C. § 12203(a). But "[t]he Eleventh Amendment bars private money damages actions for state violations of ADA Title I . . .;" Tennessee v. Lane, 541 U.S. 509,

CIVIL 15-3167CCC                              10

124 S.Ct. 1978, 158 L.Ed. 2d 820 (2004). And this bar has been extended to claims under ADA's Title V predicated on alleged violations of its Title I. See Demshki v. Monteith, 255 F.3d 986, 988–89 (9th Cir. 2001). Therefore, all of the defendants, which include the Commonwealth and various of its instrumentalities, are immune to the monetary claims raised by plaintiff under ADA's Title I and V. Torres–Alamo v. Puerto Rico, 50 F.3d 20 (1st Cir. 2007). See also Montalvo–Padilla v. Univ. of P.R., 492 F.Supp. 2d 36, 43 (D.P.R. 2007) (holding that "the protection afforded by the [Eleventh] Amendment extends not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity.").

In light of the above, plaintiff's claim for monetary relief under the ADA is ORDERED DISMISSED, with prejudice.

**Injunctive relief under the ADA and injunctive and monetary relief under the Rehabilitation Act**.

Regarding plaintiff's claims for injunctive relief under the ADA and his claims for injunctive and monetary relief under the Rehabilitation Act, these fail on the merits. We note at the outset that claims under the ADA and the Rehabilitation Act are analyzed using the same standards since both statutes contain similar language and are "quite similar in purpose and scope." McPherson v. Mich. High Sch. Athletic Ass'n, Inc., 119 F.3d 453, 459–60 (6th Cir. 1997); see also Phelps v. Optima Health, Inc., 251 F.3d 21, 23 fn. 2 (1st Cir. 2001), Oliveras-Sifre v. Department of Health, 214 F.3d 23, 25, n. 2 (1st Cir. 2000), EEOC v. Amego, Inc., 110 F.3d 135, 143 (1st Cir. 1997). To state a claim under the ADA (and, ergo, under the Rehabilitation Act), plaintiff must plausibly plead that he: (1) was disabled; (2) was able perform the essential functions of his job, with or without an accommodation; and (3) was

CIVIL 15-3167CCC                                    11

discharged because of his disability. Roman–Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 48 (1st Cir. 2011) (internal citations omitted).

As the undisputed facts clearly establish, once plaintiff requested a reasonable accommodation based on his mental condition from his employer MTA, the agency immediately started the process to attend his needs. When plaintiff completed the paperwork required by MTA, he was duly evaluated by a contracted psychologist, who issued recommendations as to reasonable accommodations that would also allow him to perform the essential duties of his position. Said recommendations were adopted, and the agency began to implement them. While immersed in said process, however, plaintiff tested positive to cocaine in a random drug test which thwarted the entire process. Given the seriousness of this conduct, which violated the agency's zero drug-tolerance policy and contravened the sensitivity of his position, administrative charges were filed against plaintiff which eventually led to his termination from employment effective on February 17, 2015. Plaintiff's positive testing to cocaine, in fact, rendered him ineligible to qualify as an "individual with a disability" under the ADA which excludes from said classification a person that "is currently engaging in the illegal use of drugs, when the covered entity acts on the basis of such use." 42 U.S.C. § 12114(a); see also Jones v. City of Boston, 752 F.3d 38, 58 (1st Cir. 2014). In sum, the evidence on record clearly establishes that plaintiff was not discharged because of his disability but rather for having used controlled substances during his employment in violation of MTA's regulations.

Plaintiff's retaliation claims under both statutes are similarly meritless. To prove retaliation, a plaintiff must establish that (1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was

CIVIL 15-3167CCC                                    12

a causal connection between the protected conduct and the adverse employment action. Wyatt v. City of Boston, 35 F.3d 13, 15 (1st Cir. 1994). The protected conduct here would be his filing of a discrimination charge before the Equal Employment Opportunity Commission on December 17, 2014, and the adverse action would be his termination from employment on February 17, 2015. But plaintiff has failed to establish that there was a causal connection between the protected conduct and the adverse employment action. What the evidence does show is that his termination was a consequence of his having tested positive to cocaine on November 12, 2014, which led to the December 16, 2014 recommendation by Howe to MTA's Executive Director Ruiz-Garcia that administrative charges be filed against plaintiff and which resulted in the commencement of a disciplinary process against him. There is simply no evidence that plaintiff's termination was in retaliation for his filing of a discrimination charge on December 17, 2014.

Accordingly, and for the reasons stated, plaintiff's claims for injunctive relief under the ADA and for injunctive and monetary relief under the Rehabilitation Act are ORDERED DISMISSED, with prejudice.

**Equal protection claims under Section 1983**.

As to this claim, plaintiff merely alleged in his Complaint that "Defendant's (sic) actions constitute unlawful and unreasonable discrimination against disabled individuals which is expressly prohibited by the Equal Protection Clause to the Fourteenth Amendment of the Constitution of the United States, the ADA and the Rehabilitation Act." and "unlawful retaliation which is expressly prohibited by the Equal Protection Clause to the Fourteenth Amendment of the Constitution of the United States, the ADA, and the

CIVIL 15-3167CCC						13

Rehabilitation Act." (d.e. 1, p. 4, paragraphs 2-3).  He further averred that "her (sic) claims for monetary relief under the Equal Protection Clause are enforceable under 42 U.S.C. § 1983." Id., at paragraph 5.

Section 1983 creates no independent substantive rights, but rather, provides a cause of action by which individuals may seek money damages for governmental violations of rights protected by federal law. Albright v. Oliver, 510 U.S. 266, 271 (1994); Cruz–Erazo v. Rivera–Montanez, 212 F.3d 617, 620 (1st Cir. 2000).  To state a claim pursuant to Section 1983, plaintiffs must show that: (i) the conduct complained of has been committed under color of state law; (ii) this conduct worked a denial of rights secured by the Constitution or laws of the United States, and (iii) defendants' alleged conduct was causally connected to plaintiff's deprivation.  Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989).

The Equal Protection Clause of the Fourteenth Amendment "contemplates that similarly situated persons are to receive substantially similar treatment from their government." Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004).  A plaintiff alleging an equal protection violation must, therefore, show that, "compared to others similarly situated, [he] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortgage Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001).  A necessary element in an equal protection claim is proof of intent to discriminate. Rivera v. Puerto Rico Aqueduct & Sewers Auth., 33 F.3d 183, 192 (1st Cir. 2003); Soto v. Flores, 103 F.3d 1056, 1067 (1st Cir. 1997).

CIVIL 15-3167CCC             14

The only claim that could be deciphered from plaintiff's pleadings under the Equal Protection Clause cannot withstand defendants' motions for summary judgment for the same reasons associated with the ADA and Rehabilitation Act claims analysis. As an Equal Protection plaintiff, he must prove that the defendants acted with discriminatory intent. But, as noted above in the discussion of those claims, the evidence on record shows otherwise. The inadequacy of plaintiff's ADA and Rehabilitation Act claims establishes the inadequacy of his § 1983 claim.  Thus, plaintiff's equal protection claim under section 1983 is ORDERED DISMISSED, with prejudice.

### Supplemental Claims

Since all of plaintiffs' federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over plaintiff's claims under Article 1802 of the Civil Code of Puerto Rico.  See Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992) (quoting Cullen v. Mattaliano, 690 F. Supp. 93 (D. Mass. 1988) ("[I]t is the settled rule in this Circuit that in a non-diversity case, where pendent state claims are joined with a federal cause of action and that federal cause of action is [dismissed] . . . the pendent state claims should be dismissed.").

### IV.     CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by defendants Commonwealth, DOJ, Miranda and DPT (**d.e. 32**) and the Motion for Summary Judgment filed by defendant MTA (**d.e. 35**) are both GRANTED. Accordingly, plaintiff's claims brought pursuant to the ADA, the Rehabilitation Act and Section 1983 are DISMISSED WITH PREJUDICE.  As the Court

declines to exercise supplemental jurisdiction over plaintiff's claims under Puerto Rico law, those are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

At San Juan, Puerto Rico, on March 17, 2017.

S/CARMEN CONSUELO CEREZO
United States District Judge